1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 AMIR SHABAZZ, | ) Case No.: 1:11-cv-01558-DAD-SAB (PC) |
| 12         Plaintiff, | ) |
| 13   v. | ) FINDINGS AND RECOMMENDATIONS REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| 14 GIURBINO, et al., | ) |
| 15         Defendants. | ) [ECF Nos. 74, 78, 79] |
| 16 _____ | ) |

17       Plaintiff Amir Shabazz is appearing pro se and in forma pauperis in this civil rights action

18 pursuant to 42 U.S.C. § 1983.

19       Currently before the Court is Defendants' motion for summary judgment, filed November 17,

20 2016, and Plaintiff's cross-motion for summary judgment, filed November 30, 2016.

21 **I.**

22 **RELEVANT HISTORY**

23       This action is proceeding on Plaintiff's First Amended Complaint against Defendants Giurbino

24 Director of California Department of Corrections and Rehabilitation (CDCR)), Trimble (Warden at

25 Pleasant Valley State Prison (PVSP)), Fisher (Associate Warden at PVSP), Myers (Community

26 Resource Manager), and Farkas (Correctional Food Manager) for violation of Plaintiff's rights under

27 the free exercise clause of the First Amendment, the Equal Protection Clause of the Fourteenth

28 Amendment, and the Religious Land Use and Institutionalized Persons Act.

1

On October 9, 2014, the Court granted Defendants' motion to dismiss Plaintiff's monetary claims against Defendants in their official capacity and claim for injunctive relief against individual Defendants under RLUIPA.  (ECF No. 33.)

 On December 10, 2014, Defendants filed an answer to the complaint.  On December 16, 2014, the Court issued the discovery and scheduling order.

On February 12, 2016, the Court denied Defendants Farkas, Fisher and Trimble's motion for summary judgment for failure to exhaust the administrative remedies.  (ECF No. 52.)

On July 28, 2016, the Court denied Defendants' motion for reconsideration of the Court's February 12, 2016, order.  (ECF No. 64.)

As previously stated, on November 17, 2016, Defendants filed a motion for summary judgment.[1]  Plaintiff filed an opposition and a cross-motion for summary judgment on November 30, 2016.  Defendants filed a reply and opposition on December 22, 2016.  Accordingly, pursuant to Local Rule 230(l), this motion is deemed submitted for review without oral argument.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  <u>Johnson v. Poway Unified Sch. Dist.</u>, 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  <u>Johnson v. Poway Unified Sch. Dist.</u>, 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007).  Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### SUMMARY OF PLAINTIFF'S COMPLAINT[2]

Plaintiff who is a Muslim prisoner alleges that on or about February 28, 2011, Defendants and the CDCR started serving Muslim prisoners vegetarian meals for breakfast and lunch through the Religious Meat Alternate Program ("RMAP"). Plaintiff complained that the RMAP's vegetarian meals did not meet the dietary requirements of his Islamic faith. Plaintiff further complained that serving vegetarian meals to Muslim inmates was discriminatory because Jewish inmates, whose religious dietary requirements are similar to those of Muslims, receive Kosher meat options at every meal.

### IV.

### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on all of his claims. Defendants oppose Plaintiff's motion as procedurally defective and for lack of evidence to demonstrate entitlement to judgment as a matter of law.

Defendants are correct that Plaintiff's motion for summary judgment is defective in that Plaintiff's statement of undisputed facts fails to cite or reference any evidence but simply asserts legal conclusions. (ECF No. 79.) Local Rule 260 specifically provides that every motion for summary judgment shall be accompanied by a Statement of Undisputed Facts that shall "enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." Local Rule 260(a); Fed. R. Civ. P. 56(c). Plaintiff's summary judgment motion is nothing more than legal arguments devoid of specific reference to the documentation and evidence in support of such claims. The parties bear the burden of supporting their motion and opposition with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Fed. R. Civ. P. 56(c); <u>Carmen v. San Francisco</u>

---

[2] This action is proceeding on Plaintiff's first amended complaint, filed October 28, 2013. (ECF No. 12.) Because Plaintiff's first amended complaint is verified it constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment. <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004).

Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 386 (9th Cir. 2010); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010); Carmen v. San Francisco Unified School Dist., 237 F.3d at 1031. Accordingly, Plaintiff, as the moving party, has failed to produce evidence to meet his initial burden of proof, and the burden therefore has not shift to Defendants. Thus, Plaintiff's cross-motion for summary judgment must be denied. In any event, for the reasons explained below, Defendants' motion for summary judgment shall be granted.

## V.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.      Defendants' Request for Judicial Notice**

Defendants request that the Court take judicial notice of: (1) Notice of Change of Regulations, No. 09-09; (2) Notice of Approval of Regulatory Action, OAL File No. 2009-1217-01 S; (3) Notice of Change to the Department Operational Manual, addressing changes to Chapter 5, Article 51; and (4) Notice of Change to Regulations, No. 16-08. (Defs.' Req. Judicial Notice (RJN), Exs. 1-4, ECF No. 75.)

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record, including records and reports of administrative agencies. United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008) (quotations marks and citations omitted).

The Court grants Defendants' request for judicial notice of Exhibits 1 through 4.

**B.      Statement of Undisputed Facts**

1.      Plaintiff Shabazz is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) currently housed at San Quentin State Prison. (Pl.' Dep. 10:19-22.) Plaintiff has no formal medical education. (Pl. Dep. 57:20-21.)

2.      Between June of 2009 and December of 2011, Plaintiff Shabazz was incarcerated at Pleasant Valley State Prison (PVSP). (Pl. Dep. 11:4-8.)

3.　　Plaintiff has no expectation of returning to PVSP.  (Pl. Dep. 10:23-25.)

4.　　Defendant Trimble served as Acting Warden at PVSP between approximately January to November of 2011.  (Trimble Decl. at ¶ 3.)

5.　　Defendant Myers served as Acting Community Resources Manager at PVSP between 2010 and 2013.  (Myers Decl. at ¶ 3.)

6.　　Defendant Farkas was employed as Correctional Food Manager at PVSP, and is now employed as Community Resources Manager at PVSP.  (Farkas Decl. at ¶¶ 2-3.)

7.　　Defendant Fisher was employed as Associate Warden of Central Operations at PVSP from April of 2010 through December of 2011, and is currently employed as Warden of Valley State Prison.  (Fisher Decl. at ¶ 2.)

8.　　Defendant Giurbino was employed as Director for the Division of Adult Institutions between January of 2010 and December of 2011, and is now a retired annuitant with CDCR.  (Giurbon Decl. at ¶¶ 1-2.)

9.　　Defendants Trimble and Myers are retired from CDCR.  (Trimble Decl. at ¶ 1; Myers Decl. at ¶ 1.)

10.　　Plaintiff has been a Muslim since 1977.  (Pl. Dep. 13:20-14:2.)

11.　　Plaintiff does not follow a particular person's interpretation of Islamic law.  (Pl. Dep. 14:3-15:16.)

12.　　Plaintiff's faith requires that he only eat meat that is halal.  (Pl. Dep. 15:17-17:10.)

13.　　Plaintiff asserts that his religious dietary requirements may be met by a kosher diet. (First Am. Compl. at 8 ¶ 13, 11 ¶ 3, ECF No. 12.)

14.　　The term "halal" in its broadest sense, means "permissible" or "allowed."  To designate a food as "halal" is to state that it is permissible to eat under Islamic law.  (Johnson Decl. at ¶ 5.)

15.　　Under Islamic law, all food items are considered halal, and permissible, unless there is a text from the Quran or the authentic Sunnah (words of Prophet Muhammad) that designates a particular type of food as haram (impure).  (Johnson Decl. at ¶ 6.)

16.　　Islamic law holds that meat is haram unless it is slaughtered using halal methods, which includes the utterance of an Islamic prayer over the animal, and the use of a well-sharpened knife to

slit the animal's throat.  For these reasons, the terms "halal" and "haram" are often applied to meat items and methods of slaughtering.  (Johnson Decl. at ¶ 7; Pl. Dep. 15:22-17:10.)

17.     Vegetables and other non-meat items are halal according to Islamic law, unless they are contaminated with meat that is not halal.  (Johnson Decl. at ¶ 6; Pl. Dep. 17:11-20:9.)

18.     Before February 2, 2010, Title 15 of the California Code of Regulations (Title 15) and the CDCR Operations Manual (DOM), which sets forth CDCR policy and procedures, did not specifically address the dietary needs of Muslim inmates.  The only religious diet options were the Jewish Kosher Diet, offered to Jewish inmates, and the Religious Vegetarian Diet, offered to any inmate based on determined religious dietary needs.  (Regulatory Addendum, Ex. A, at RA 002-003, Cal. Code Regs. tit. 15, §§ 3054-3054.3 (Oct. 2009 rev.); Giurbino Decl. at ¶ 4.)

19.     In January of 2009, CDCR proposed changes to its regulations relating to inmate religious diets in order to accommodate the religious needs of Muslim inmates and other inmates whose needs were not met under other diet programs.  (Notice of Change of Regulations, (RJN) Ex. A; Giurbino Decl. at ¶ 3.)

20.     The changes to CDCR regulations proposed in January of 2009 included the creation of a new diet program called the Religious Meat Alternate Program (RMAP), which would offer a diet that included halal meat.  (RJN Ex. A; Giurbino Decl. at ¶ 3.)

21.     On February 2, 2010, the State of California Office of Administrative Law approved regulations governing the RMAP.  (RJN Ex. B.)

22.     Final amendments to the DOM, which added new language regarding the halal meat option for inmate-participants in the RMAP, were published on July 13, 2010.  The revisions provided that, under the RMAP, inmates would receive halal meat at dinner, and a vegetarian alternate at breakfast and lunch.  (RJN Ex. C. at 6-7.)

23.     The RMAP was developed as a program that would provide inmate-participants with halal-certified meat at dinner, and with a vegetarian breakfast and lunch.  (Giurbino Decl. at 10; RJN Ex. C.)

24.     The RMAP, as set forth in Title 15, was approved after a lengthy process in compliance with the rulemaking procedures set forth in the Administrative Procedure Act.  The process included

the posting of the proposed changes, a public comment period, a public hearing, an analysis of the fiscal and economic impact of the revisions, consideration of alternatives, a policy statement overview, and a statement of reasons for the revisions. (Giurbino Decl. at ¶ 7.)

25.     The DOM procedures implementing the RMAP were prepared concurrently with the regulations enshrined in Title 15. Development of the DOM procedures governing the RMAP included analysis of the revisions by CDCR's Regulation and Policy Management Bureau, performance of a regulatory impact determination, review of the revisions by other divisions, and consideration of the cost of providing various menu options. Development of the DOM procedures also involved conferences with religious stakeholders, including Muslim chaplains and Muslim religious leaders, regarding the religious dietary needs of Muslim inmates. (Giurbino Decl. at ¶ 8.)

26.     Former Director Giurbino announced the approval of the amendments to Title 15 and the implementation of the RMAP in a memorandum to CDCR Wardens, Correctional Food Managers, and Associate Directors of the Division of Adult Institutions. (Giurbino Decl. at ¶ 11 & Ex. A.)

27.     Plaintiff may request to participate in the Kosher Diet Program (formerly the Jewish Kosher Diet Program) under current CDCR regulations. (RJN Ex. D.)

28.     Inmates who participate in the Kosher Diet Program do not receive meat at every meal. (Shabazz Dep. 60:17-61:11.)

29.     While housed at PVSP, Plaintiff filed grievance No. PVSP-C-11-00363 regarding the Religious Meat Alternate Program. (ECF No. 12 at 14-18.)

30.     Defendant Myers responded to grievance No. PVSP-C-11-00363 at the First Level of Review. (Myers Decl. ¶ 8.)

31.     The grievance was partially granted at the first level in that an investigation had been conducted and confirmed that halal food at PVSP was purchased, stored, prepared, and served according to halal standards. (ECF No. 12 at 19-20; Myers Decl. at ¶ 8.)

32.     Defendant Fisher co-signed the response to grievance No. PVSP-C-11-00363 at the first level of review. (Fisher Decl. at ¶ 8.)

33.     Defendant Trimble did not personally review or sign the second level response to Plaintiff's grievance No. PVSP-C-11-00363. (Trimble Decl. at ¶ 9.)

34. While housed at PVSP, Plaintiff participated in the RMAP. (Pl. Dep. 27:15-18.)

35. Under the RMAP, Plaintiff's typical lunch was a meatless lunch, often including peanut butter, cheese, and sometimes tuna. (Pl. Dep. 27:15-18.)

36. Plaintiff's religious beliefs allow him to eat peanut butter, cheese, and tuna. (Pl. Dep. 27:19-25.)

37. While at PVSP, Plaintiff's breakfast would often include meat alternates such as eggs, peanut butter, and cheese. (Pl. Dep. 28:3-31:10.)

38. Plaintiff's religious beliefs allow him to eat the items that he typically received for breakfast under the RMAP. (Pl. Dep. 28:3-31:10.)

39. When Plaintiff participated in the RMAP at PVSP, he received a dinner with halal meat. (ECF No. 12 at 7-9.)

40. While housed at PVSP, Plaintiff was able to purchase halal food from outside vendors. (Pl. Dep. 29:11-21.)

41. Plaintiff was not a vegetarian when he received a halal diet at PVSP. (Pl. Dep. 35:4-11.)

42. Plaintiff currently receives halal food, including halal meat, under the RMAP. (Pl. Dep. 34:18-20; Johnson Decl. at ¶¶ 9-10; Maurino Decl. at ¶¶ 7, 12.)

43. In this lawsuit, Plaintiff seeks a "halal diet for breakfast, lunch and dinner," or "the same [k]osher meals that Jewish prisoners receive for breakfast and lunch." (Pl. Dep. 59:2-5; ECF No. 12 at 11.)

**C.     Findings on Defendants' Motion**

1.     <u>Plaintiff Can Not Prosecute this Action on Behalf of Other Inmates</u>

Plaintiff does not have standing to bring the claims of other inmates. Standing raises both constitutional and prudential concerns incident to the federal court's exercise of jurisdiction. <u>Coalition of Clergy, Lawyers, and Professionals v. Bush</u>, 310 F.3d 1153, 1157 (9th Cir. 2002). A prudential principle of standing is that normally a plaintiff must assert his own legal rights rather than those of third parties. <u>Oregon v. Legal Services Corp.</u>, 552 F.3d 965, 971 (9th Cir. 2009); <u>Fleck and Associates, Inc. v. Phoenix</u>, 471 F.3d 1100, 1104 (9th Cir. 2006.) In some circumstances a litigant

may seek relief for third persons, however, the litigant must demonstrate 1) the litigant suffered an injury in fact; 2) that there is a close relationship between the litigant and the individual who possesses the right that the litigant is asserting; and 3) there is a hindrance to the individual's ability to assert his own rights.  Coalition of Clergy, Lawyers, and Professionals, 310 F.3d at 1163; Fleck and Associates, Inc., 471 F.3d at 1105 n.3;  McCollum v. California Dep't of Corrections and Rehabilitation, 647 F.3d 870, 878 (9th Cir. 2011).

In order to bring a claim for a third party, Plaintiff must show that the individual is unable to litigate his own claims due to mental incapacity, lack of court access, or other similar disability, and that he has some significant relationship with and is truly dedicated to the best interests of the individual.  Coal. of Clergy, Lawyers, & Professors v. Bush, 310 F.3d 1153, 1159-60 (9th Cir. 2002). While Plaintiff has demonstrated that he has suffered an injury in fact and has standing to bring claims on his own behalf, Plaintiff has not demonstrated that other Muslim inmates would be hindered in their ability to assert their own rights.  As this Court is well aware, the fact that an individual is in custody does not mean that he is unable to pursue litigation to enforce his federal rights.  See McCollum, 647 F.3d at 879 (denying third party standing and noting that inmates have the ability to assert their own rights).  This Court regularly addresses cases filed by inmates seeking to assert their federal rights while incarcerated.  No matter how friendly and sympathetic the litigant is to the cause of the individuals he seeks to represent, a plaintiff without a significant relationship is less likely to know the best interests of the individual.  Coal. Of Clergy, Lawyers, & Professors, 310 F.3d at 1162.

Also, "[a] litigant appearing in propria persona has no authority to represent anyone other than himself" in the action.  Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); see also McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant).  Similarly, Federal Rule of Civil Procedure 23 requires that the party representing a class must be able to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a).  The ability to protect the interests of the class depends on the quality of counsel representing the class members.  Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).  The competence of a layman in representing himself is too limited to allow him to risk the rights of others, therefore, an inmate proceeding without the assistance of counsel cannot represent other inmates in a class action.

Oxendine, 509 F.2d at 1407; Cevallos v. City of Los Angeles, 914 F.Supp. 379, 385 (C.D. Cal. 1996) (to fairly and adequately represent a class of individuals the plaintiffs must be represented by counsel). "This rule is an outgrowth not only of the belief that a layman, untutored in the law, cannot 'adequately represent' the interests of the members of the 'class,' but also out of the long-standing general prohibition against even attorneys acting as both class representative and counsel for the class." Huddleston v. Duckworth, 97 F.R.D. 512, 514 (N.D. Ind. 1983).

Plaintiff cannot prosecute this action on behalf of other inmates and this action is proceeding solely as to Plaintiff's individual claims for all causes of action. Accordingly, Plaintiff's arguments and evidence regarding allegations beyond his individual claims will not be considered or addressed on this motion for summary judgment.

2.     Defendants Farkas, Fisher, Myers and Trimble

Defendants Farkas, Fisher, Myers and Trimble argue that they had no authority to alter CDCR policies and procedures governing RMAP. More specifically, Defendants contend that they had no involvement in the creation of the RMAP, and had no authority to revise CDCR's regarding the RMAP.

Each Defendant submits a declaration indicating that they had no involvement in the creation of the RMAP, and had no authority to revise CDCR's policies regarding the RMAP. (Farkas Decl. at ¶ 14; Fisher Decl. at ¶ 7; Trimble Decl. at ¶ 6; Myers Decl. at ¶ 6.) Because Plaintiff's claims challenge solely the RMAP, the Court finds that Defendants have met their burden of proof in demonstrating that they had no authority and/or involvement in the creation of the RMAP, and therefore liability under section 1983 cannot be imposed. Cf. Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 (9th Cir. 1999). Plaintiff's argument that each Defendant was apprised of his objections to the diet provided under the RMAP is insufficient to demonstrate liability under section 1983. Plaintiff has failed to present evidence that Defendants Farkas, Fisher, Myers and/or Trimble had any authority to alter or any involvement in the creation of the RMAP. Therefore, Defendants Farkas, Fisher, Myers and Trimble's motion for summary judgment should be granted.

///

///

11

3.     Defendant Giurbino

a.     **Free Exercise of Religion Under the First Amendment**

Plaintiff contends that because the RMAP requires him to eat two vegetarian meals at breakfast and lunch substantially burdens the exercise of his religious beliefs.

"[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1997)).  The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'"  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  Courts apply a four-part test to balance the inmate's free exercise right against the state's legitimate penological interests to determine if a regulation is reasonable and constitutional.  Turner, 482 U.S. at 89.

In considering the first Turner factor, the court must "(1) determine whether the regulation is legitimate and neutral, and (2) assess whether there is a rational relationship between the governmental objective and the regulation."  Ashker, 350 F.3d at 922.

> In determining whether there is a rational relationship between the purported objective and the regulation, the level of scrutiny applied to the judgment of prison officials depends on the circumstances in each case.  If an inmate presents sufficient evidence to refute a common-sense connection between a legitimate objective and a prison regulation, ... the state must present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational."  If, however, the inmate does not present evidence sufficient to refute a common-sense connection between the regulation and the government objective, prison officials need not prove that the banned material actually caused problems in the past or that the materials are likely to cause problems in the future.  The only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests.

Ashker, 350 F.3d at 922-23 (internal quotations and citations omitted).

Defendant does not argue that Plaintiff's religious beliefs are not sincerely held.  However, Defendant argues that the RMAP accommodates Plaintiff's religious dietary needs and does not substantially burden Plaintiff's religious exercise.

Plaintiff contends that providing two vegetarian meals intentionally deprived him of important nutrients, such as iron and zinc found in Halal meat.   In his opposition, Plaintiff contends "that his primary issues with the vegetarian diet that Defendant's had provided in the place of providing Plaintiff with three Halal meals is that it violates the sunna and Islamic tradition (i.e. religious teachings and practices of Prophet Muhammad (peace and blessings be upon him) and causes a violation of the current tenants of Al-Islam which every Muslim man and woman must follow in order to be within the folds of Al-Islam, therefore, summary judgment must be denied to Defendant's based upon this genuine disputed facts must be decided by a jury." (Pl. Opp'n at 8.)[3]   At his deposition, Plaintiff testified that according to his faith, he is supposed to eat a halal wholesome meal and when meat is available he is supposed to eat it.  (Pl. Dep. at 22:16-20.)

The Court finds that Plaintiff has adequately met his burden of demonstrating a substantial burden on the exercise of his religion.  Thus, the Court turns to the analysis of the four <u>Turner</u> factors.

1).    <u>First Turner Factor</u>

With regard to the first <u>Turner</u> factor, Defendant argues the RMAP was created in part to satisfy the religious dietary requirements of a substantial group of inmates while providing a standardized menu so that food costs could be kept down.  (<u>See</u> Notice of Change of Regulations, RJN Ex. A; Giurbino Decl. at ¶ 3; Giurbino Decl. at ¶¶ 7-8; Maurino Decl. at ¶ 8; Regulatory Addendum, Ex. B, at RA 005-006; Cal. Code Regs. tit. 15, § 3054.3 (Jan. 2011 rev.).)  Defendant therefore reasons that there is a valid rational connection between the RMAP and CDCR's interest in reasonably accommodating the dietary needs of its inmate population while controlling food costs, satisfying the first prong of the <u>Turner</u> test.

Although Defendant has not submitted specific evidence in support of his argument that the

_____

[3] References herein to page numbers are to the Court's ECF pagination headers.

RMAP provides a standardized menu to keep costs down as compared to other inmates such as Jewish inmates or other inmates with regular dietary needs. Nonetheless, in <u>Ward v. Walsh</u>, the Ninth Circuit found that with regard to the first <u>Turner</u> factor, "[t]he prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties. Since the policy of not providing special diets is related to simplified food service, the first [<u>Turner</u>] factor weighs in favor of the government." <u>Ward</u>, 1 F.3d 873, 877 (9th Cir. 1993); accord <u>Sefeldeen v. Alameida</u>, 238 Fed. Appx. 204, 206 (9th Cir. 2007) ("the legitimate governmental interest [] to reasonably accommodate thousands of inmates' religious dietary needs while also considering budgetary, staff, and security limitations" satisfies the first <u>Turner</u> factor); <u>see also</u> <u>Shakur v. Schriro</u>, 514 F.3d at 855-56 (court determined "the reduction of administrative and budgetary burdens" were legitimate penological interests upon which the Arizona Department of Corrections "could rationally conclude that denying Muslim prisoners kosher meals would simplify its food service and reduce expenditures.") Accordingly, the Court finds that the first <u>Turner</u> factor weighs more in Defendant's favor to maintain the status quo.

2). <u>Second Turner Factor</u>

The second <u>Turner</u> factor requires courts to consider whether the inmate has alternative ways to practice his religion. <u>Turner</u>, 482 U.S. at 90. "The relevant inquiry under this factor is not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, we are to determine whether the inmates have been denied all means of religious expression." <u>Ward</u>, 1 F.3d at 877 (citing <u>O'Lone</u>, 482. U.S. at 351-52).

Defendant argues only that Plaintiff is able to eat the food provided under the RMAP, his diet under the RMAP includes halal meat. Furthermore, Plaintiff can order additional halal food from outside vendors.

Defendant's argument misses the point. As stated above, the relevant inquiry under the second <u>Turner</u> factor is whether the inmate has alternative means of practicing his religion other than the claims of which are alleged to be affected. However, Plaintiff does not argue that he was foreclosed from other, nondietary, means of expressing his religious beliefs. Accordingly, the second <u>Turner</u> factor weighs in favor of Defendant.

14

3).     <u>Third Turner Factor</u>

The third <u>Turner</u> factor requires the courts to consider the impact that the proposed accommodation would have on "guards and other inmates, and on the allocation of prison resources generally." <u>Id.</u> When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials. <u>Id.</u> (citing <u>Jones v. North Caroline Prisoners' Union</u>, 433 U.S. 119, 132-33 (1977) (giving deference to prison officials' judgment that a prisoners' labor union would be detrimental to order and security in the prison)).

Defendant argues that the prison has a legitimate interest in simplifying food service. Defendant contends that given the number of inmates in the custody of CDCR, and the wide variety of religions practiced by them, there could be a significant "ripple effect" if CDCR is forced to modify the RMAP, particularly for an inmate who concedes that his religion does not require him to eat meat at every meal. In addition, the amendment of the CDCR regulations is a lengthy process requiring notice and comment, which already occurred with the creation of the RMAP.

There is insufficient evidence before the Court to determine the third <u>Turner</u> factor that providing Halal meat meals would have a marked effect on CDCR. Defendant merely speculates as to a "ripple effect," and there is insufficient evidence to support such assertion. Accordingly, this factors weighs in favor of Plaintiff.

4).     <u>Fourth Turner Factor</u>

The fourth <u>Turner</u> factor requires courts to consider whether there is an "absence of ready alternatives" to the prison regulation. <u>Turner</u>, 482 U.S. at 90. The burden is on the prisoner challenging the regulation, not on prison officials, to show that there are obvious, easy alternatives to the regulation. <u>O'Lone v. Shabazz</u>, 482 U.S. at 350.

Defendant argues that Plaintiff testified that the halal meat he receives is acceptable under Islamic law, as were the foods that he received for breakfast and lunch at PVSP. Plaintiff also testified that the kosher diet would be acceptable which he can request under current CDCR regulations. Defendant also argues there is no easy alternative to CDCR's current diet programs because development of a new program would require significant time and resources.

Defendant fails to present evidence to support his argument, and the Court cannot determine this factor. The fact that Plaintiff can now request a kosher diet under current regulations belies Defendant's argument that there is an "absence of ready alternatives." Further, Defendant overlooks the fact that Plaintiff's claim is that the vegetarian meals for breakfast and lunch are in violation of his religious beliefs and detrimental to his physical well-being by forcing him to eat as a vegetarian.

Based on an analysis of the four Turner factors, the Court finds that on balance the factors weigh in favor of Plaintiff and against Defendant, and summary judgment should be denied on this claim.

**b.     Equal Protection Clause of the Fourteenth Amendment**

Plaintiff argues that as a Muslim observant he is not accorded the same opportunity to practice his religious beliefs as Jewish inmates who receive Kosher foods at every meal in violation of the Equal Protection Clause of the Fourteenth Amendment. As previously stated, Plaintiff receives a Halal meat dinner only, and a vegetarian meal at breakfast and lunch.

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). A prisoner is entitled "to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008) (quoting Cruz v. Beto, 405 U.S. 319, 321-22 (1972) (per curiam)). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22; Shakur, 514 F.3d at 891; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), overruled in part on other grounds by Shakur, 514 F.3d at 884-85. However, the Equal Protection Clause does not require "that all prisoners must receive identical treatment and resources." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013).

Defendant argues that the RMAP is neutral on its face because it is offered to any inmate and is designed to accommodate and honor the religious and non-religious dietary needs of its inmate population. Plaintiff was not treated differently from similarly situated inmates because Plaintiff has been able to practice his faith in a way that is comparable to inmates of other religious groups. Defendant contends that because RMAP satisfies Plaintiff's religious beliefs, Plaintiff has not been denied the opportunity to practice his religion, and the program fulfills legitimate governmental interests, no equal protection claim can be established.

In analyzing a similar claim, the Ninth Circuit stated that the appropriate equal protection comparison is between Defendant's treatment of Plaintiff as a Muslim, and Defendant's treatment of Jewish prisoners. Shakur, 514 F.3d at 891. "Under the Turner test, Shakur cannot succeed if the difference between the defendants' treatment of him and their treatment of Jewish inmates is reasonably related to legitimate penological interests." Id. (citations and internal quotation marks omitted). In Shakur, the Ninth Circuit concluded that it could not determine the equal protection claim based on the insufficiency of the record to resolve the Turner analysis. Id. at 891-92. For the reasons explained above with regard to the free exercise claim, the record is insufficient to determine as a matter of law that Defendant is entitled to judgment on Plaintiff's equal protection claim.

### c. Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Mullenix v. Luna, 136 S.Ct. 305, 308 (2015).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood what he is doing violates that right.'" Mullenix, 136 S.Ct. at 308 (quoting Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012)).

The Supreme Court recently cautioned that, when conducting an inquiry into qualified immunity, courts should not define clearly established law at a high level of generality. Mullenix, 136

S.Ct. at 308. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (emphasis in original). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Mullenix, 136 S.Ct. at 308 (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam)).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

"Qualified immunity is only an immunity from suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." Hydrick v. Hunter, 669 F.3d 937, 939-40 (9th Cir. 2012).

Although it is beyond dispute that "[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion," McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987); see also Ward, 1 F.3d at 877, the dispositive determination is 'whether the violative nature of *particular* conduct is clearly established.'" Id. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (emphasis in original).

Based on the lack of sufficient evidence in the record, the Court cannot determine whether, taken in the light most favorable to Plaintiff, Defendant's conduct violated Plaintiff's constitutional rights. However, the Court finds that Defendant is entitled to qualified immunity based on the lack of

clearly established law at the time of the alleged wrongdoing.

In 2010, when the RMAP was implemented, and as applied in this case in 2011, established law provided that a failure to provide a halal diet may constitute a substantial burden on an inmate's right to practice his religion. Indeed, in <u>Shakur</u>, the Ninth Circuit held that entirely denying an inmate halal meat placed a substantial burden on an inmate's religious exercise when he suffered adverse health effects. <u>Shakur</u>, 514 F.3d at 889. Defendant submits that the RMAP was created to provide Plaintiff and other inmates with a nutritionally appropriate halal diet that includes halal meat, and no prison official would have been on notice in 2010/2011 that the RMAP, as implemented, was unconstitutional. When Defendant Giurbino issued the memorandum regarding the RMAP on March 18, 2010, the Ninth Circuit's decision in <u>Shakur</u> had issued. As previously stated, in <u>Shakur</u>, the Ninth Circuit held that there must be legitimate penological concerns to justify denying a Muslim inmate a Kosher diet. However, the <u>Shakur</u> opinion did not address a Muslim inmate's entitlement to a Halal diet or determine that a Muslim inmate is entitled to a Kosher diet in lieu of a Halal diet. Thus, a reasonable prison official could have determined that the RMAP which provided for a Halal-certified meat at dinner with vegetarian alternatives at breakfast and lunch was constitutional. Indeed, subsequent to <u>Shakur</u>, several district courts have found that Muslim inmates' right to Halal or Kosher meals it not clearly established. <u>See</u> <u>Walters v. Santa Clara Dep't of Corr.</u>, No. C-12-2799 EMC (PR), 2013 WL 5292042, at *12 (N.D. Cal. Sept. 19, 2013) (granting qualified immunity regarding the plaintiff's claim that his halal diet was inadequate because he was provided less meat than the institution's regular diet); <u>Robinson v. Cate</u>, No. 2:11-CV-2555 MCE AC, 2015 WL 5326199, at *31 (E.D. Cal. Sept. 10, 2015 (granting qualified immunity on the plaintiff's free-exercise and equal-protection claims when he was provided a diet under the RMAP that included halal meat); <u>see also</u> <u>Johnson v. Nevada ex rel. Board of Prison Commissioners</u>, No. 3:11-cv-00487-HDM-VPC , 2013 WL 5428423, at *6 (D. Nev. Sept. 26, 2013). The RMAP was created to provide Plaintiff and other inmates with a Halal diet which includes Halal meat, and Plaintiff received Halal meat at dinner during the relevant time of this action. (Pl. Dep. at 26-27, 31 34.) Based on the law as set forth, the Court finds that at the time of Defendant's challenged conduct, there was no clearly established constitutional right that Plaintiff, as Muslim inmate, was entitled to a full Halal diet or a full Kosher

diet, and it would have been reasonable for a prison administrator such as Defendant Giurbino to implement the RMAP. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's free exercise and equal protection claims for monetary damages.

Although qualified immunity does not apply to requests for injunctive and/or declaratory relief, Plaintiff's claims for such relief are moot. While Plaintiff's first amended complaint lists injunctive or declaratory relief, the specific relief actually sought is limited to injunctive and compensatory damages. (ECF No. 12 at 11.) Plaintiff requests "the same [k]osher meals that Jewish prisoners receive for breakfast and lunch," *or* a halal diet for breakfast, lunch, and dinner. (ECF No. 12 at 11; Pl. Dep. at 59:2-5.) Because Plaintiff has received one of the satisfactory forms of injunctive relief that he requested, his requests for injunctive relief are moot. Between 2009 and 2011, Plaintiff could not participate in what was then known as the Jewish Kosher Diet program. See Regulatory Addendum, Exs. A & B; Cal. Code Regs. tit. 15, § 3054.2 (2009 rev.); Cal. Code Regs. tit. 15, § 3054.2 (2011 rev.) However, under current regulations, Plaintiff may request kosher meals if he has a religious dietary need that cannot be met by another religious diet option or by the mainline diet. (RJN Ex. D.) Because Plaintiff has the ability to request a diet that would admittedly satisfy his religious needs under current regulations, his injunctive relief requests are moot. See Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir. 1994) (holding that at change in law renders an argument based on previous law moot).

Thus, even if the RMAP does not meet Plaintiff's religious needs, he may request and be granted a kosher diet under current CDCR regulations. Furthermore, there is no reasonable expectation that Plaintiff will be unable to request a satisfactory diet in the future. See Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) (affirming grant of summary judgment on RLUIPA claims because there was no reasonable expectation of a future violation).

Furthermore, even if the Court construed Plaintiff's request for relief to include a request for declaratory relief, such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-

20

GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

Furthermore, Plaintiff's request for a broad change to the RMAP is not narrowly tailored to address the alleged violation. Plaintiff also seeks an injunction, "prohibiting [Defendants] from serving two vegetarian meals to Plaintiff and all other Muslim men and women within CDCR." (ECF No. 12 at 11.) The Muslim community as a whole is not a party to this lawsuit. Rather, this case involves Plaintiff's allegations only that the RMAP does not satisfy his particular religious needs. (ECF No. 14, at 1) (finding that Plaintiff stated cognizable claims for violation of his rights). Thus, Plaintiff's request for broad relief is not narrowly tailored to correct the allegations violations of his constitutional rights, and must be denied. 18 U.S.C. § 3626(a)(1)(A).

### d. RLUIPA Claim for Injunctive Relief

Defendant argues that Plaintiff's diet under the RMAP does not substantially burden his religious exercise, and the RMAP serves a compelling governmental interest and is the least restrictive means of doing so.[4]

Plaintiff contends that Defendant has failed to adequately explain how the policy of serving Muslim inmates one Halal meal and two vegetarian meals was justified by health or security concerns, or that they used the least restrictive means of satisfying a compelling governmental interest. (Pl. Opp'n at 14.) At his deposition Plaintiff testified that according to his faith, he is supposed to eat a halal wholesome meal and when meat is available he is supposed to eat it. (Pl. Dep. at 22:16-20.)

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the burden furthers a compelling governmental interest, and does so by the least restrictive means." <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 712 (2005) (internal punctuation omitted) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)). Religious exercise includes "any exercise of religion, whether or not compelled by or central to, a

---

[4] On October 9, 2014, the Court dismissed Plaintiff's monetary claims against Defendants in their official capacity and claim for injunctive relief against the individual Defendants under RLUIPA. (ECF No. 33.) Thus, there is no basis to re-address Defendant's argument for dismissal of Plaintiff's claim for monetary damages under RLUIPA.

system of religious belief." <u>Cutter</u>, 544 U.S. at 715 (quoting 42 U.S.C. § 2000cc-5(7)(A)). In enacting RLUIPA, Congress replaced the "legitimate penological interest" standard with the "'compelling governmental interest' and 'least restrictive means' tests codified at 42 U.S.C. § 2000cc–1(a)." <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005).

Section 3 applies to state run institutions such as prisons. <u>Cutter</u>, 544 U.S. at 722 (citing 42 U.S.C. § 2000cc-1(a)). RLUIPA does not elevate accommodation of religion over an institutions need to maintain order and safety. <u>Cutter</u>, 544 U.S. at 723. In enacting RLUIPA, the legislature expected courts to apply the standards of RLUIPA with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." <u>Cutter</u>, 544 U.S. 709, 723 (2005) (citations omitted).

In determining whether government action is lawful under RLUIPA the Court must consider: 1) whether Plaintiff has shown that his exercise of religion is at issue; 2) whether Plaintiff is asserting a sincerely held religious belief; 3) whether the state's conduct substantially burdens Plaintiff's religious exercise; and 4) if so, was the action taken in furtherance of a compelling government interest and was narrowly tailored to that interest. <u>Rouser v. White</u>, 630 F.Supp.2d 1165, 1181-86 (E.D. Cal. 2009).

Plaintiff has demonstrated that his exercise of religion is at issue in this action. Defendant does not challenge that Plaintiff is asserting his sincerely held religious beliefs. Therefore, the Court considers the remaining steps in the analysis.

In order to state a claim for violation of RLUIPA, a plaintiff must demonstrate that the defendants substantially burdened the exercise of his religious beliefs. <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994-95 (9th Cir. 2005). The Ninth Circuit defines "substantial burden" to mean "oppressive to a significantly great extent, such that it renders religious exercise effectively impracticable." <u>Sefeldeen</u>, 239 F. App'x at 206 (quoting <u>San Jose Christian College v. City of Morgan Hill</u>, 360 F.3d 1024, 1034-35 (9th Cir. 2004) (internal quotations omitted). If plaintiff meets his initial burden, defendant must then prove that any substantial burden on plaintiff's religious exercise is both "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that

compelling governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b).

Defendant argues that because Plaintiff testified that the food he is provided under the RMAP is permissible under Islamic law, the program cannot be said to impose a "substantial burden" on Plaintiff's religious exercise. Defendant further argues that should the Court find Plaintiff has meet his burden in demonstrating a substantial burden, the RMAP serves a compelling governmental interest and is the least restrictive means of doing so. Defendant specifically argues that the RMAP provides an acceptable religious diet for all Muslim inmates in CDCR custody, and for other inmates whose religious-diet requirements cannot be met under other diet programs.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Williams v. Alioto, 549 F.2d 136, 140-41 (9th Cir. 1977). Courts have found claims under RLUIPA to be moot where the inmate is no longer subject to the alleged conditions because he has been transferred to another institution, Dearwester v. Sacramento Cty. Sheriff's Dep't, No. 2:13-CV-2066 MCE DAD, 2015 WL 4496400, at *2 (E.D. Cal. July 23, 2015), report and recommendation adopted, No. 2:13-CV-02066-MCE, 2015 WL 5147568 (E.D. Cal. Sept. 1, 2015); Bush v. Donovan, No. 12CV2573 GPC NLS, 2014 WL 1028468, at *5 (S.D. Cal. Mar. 17, 2014); released from custody, Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012); Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015); the policy creating the substantial burden on the religious exercised has been changed, Rognirhar v. Foston, No. CV-08-892-LRS, 2013 WL 4494475, at *2 (E.D. Cal. Aug. 19, 2013); or the relief requested in the claim has been received, Patterson v. Ryan, No. CV 05-1159-PHX-RCB, 2011 WL 3799099, at *7 (D. Ariz. Aug. 26, 2011), aff'd sub nom. Patterson v. Moore, 591 F.App'x 622 (9th Cir. 2015); Boyd v. Carney, No. C11-5782 BHS/KLS, 2012 WL 4903386, at *8 (W.D. Wash. Aug. 1, 2012), report and recommendation adopted, No. C11-5782BHS, 2012 WL 4896935 (W.D. Wash. Oct. 15, 2012); Von Staich v. Hamlet, No. 04-16011, 2007 WL 3001726, at *2 (9th Cir. Oct. 16, 2007) (unpublished) (under RLUIPA a claim for injunctive relief is moot when the plaintiff has received the relief requested in the complaint).

Plaintiff's claim in this action is that he has been denied a proper meal regime for his religious practices, yet the Jewish inmates are provided a kosher diet. On June 29, 2016, CDCR implemented new regulations regarding religious diet programs for inmates. As part of this regulatory change, the

Kosher diet is now available for inmates with a religious dietary need that cannot be met by another religious diet option or by the mainline diet. This regulatory change was implemented out of concern that the former regulations may not have complied with RLUIPA, and the change sought to bring CDCR policy in compliance with the applicable law. (RJN, Ex. D.) Since, the change was not based on Plaintiff's filing this suit, the Court finds that there is no reasonable expectation that Plaintiff will be denied kosher meals once this Court issues judgment in the action. Thus, if Plaintiff desires to change his religious diet, he may submit a request for a kosher diet at San Quentin, where he is currently incarcerated. (RJN Ex. C.) A case can be mooted by the voluntary cessation of conduct where there is no reasonable expectation that the violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Smith v. Univ. of Washington, Law Sch., 233 F.3d 1188, 1194 (9th Cir. 2000). Here, the Court finds that Plaintiff's RLUIPA claim is moot.

## VI.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Plaintiff's motion for summary judgment be denied;

2.     Defendants' motion for summary judgment be granted for the reasons stated herein.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///

///

///

///

///

///

may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 21, 2017**

_____
UNITED STATES MAGISTRATE JUDGE